UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**INGRAM COX,**

        Petitioner,

  v.                                                CIVIL NO. 2:21cv579
                                                  [ORIGINAL CRIMINAL NO. 2:19cr6]

**UNITED STATES OF AMERICA,**

        Respondent.

<u>**FINAL MEMORANDUM ORDER**</u>

This matter comes before the court on Petitioner's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" ("Motion"), ECF No. 177, and accompanying Memorandum in Support, ECF No. 178, filed <u>pro se</u> and subject to defect on October 13, 2021.[1] The court lifted the defect following Petitioner's remedial submission on November 30, 2021. <u>See</u> ECF No. 183. The United States filed its Response in Opposition on March 14, 2022. ECF No. 193. The court twice granted Petitioner's requests for extensions to file a reply,[2] which he ultimately filed on June 9, 2022. ECF No. 202.

---

[1] This is the date that Petitioner attests under penalty of perjury he placed his Motion in the mailbox at his facility. <u>See</u> <u>United States v. McNeill</u>, 523 F. App'x 979, 981 (4th Cir. 2013) ("[A] pro se litigant's legal papers are considered filed upon 'delivery to prison authorities, not receipt by the clerk.'" (quoting <u>Houston v. Lack</u>, 487 U.S. 266, 270-75 (1988)).

[2] The court granted these motions on April 13, 2022, ECF No. 195, and May 12, 2022, ECF No. 199.

## I. BACKGROUND

On April 3, 2019, a grand jury siting in Norfolk, Virginia, returned a seven-count, multiple defendant Superseding Indictment ("Indictment"), naming Petitioner in Counts One and Four. ECF No. 35. Count One charged Petitioner with Conspiracy to Manufacture, Distribute, and Possess with Intent to Manufacture and Distribute Heroin, in violation of 21 U.S.C. § 846. ECF No. 35 at 2-4. Count Four charged Petitioner with Possession With Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). ECF No. 35 at 5.

On August 19, 2019, Petitioner appeared before United States Magistrate Judge Robert J. Krask and pleaded guilty to Count One of the Indictment. ECF No. 66 (Minute Entry); ECF No. 68 (Plea Agreement). The Plea Agreement, ECF No. 68, and Statement of Facts, ECF No. 69, were filed under oath in open court during the hearing.

Following his plea of guilty, Petitioner appeared before the undersigned district judge for sentencing on January 8, 2020. ECF No. 110. During the hearing, the court adjudged Petitioner guilty, received evidence from the United States, and heard argument from both parties. Id. Ultimately, the court sentenced Petitioner to 168 months imprisonment, to be followed by four (4) years supervised release. ECF No. 111.

After imposition of sentence, the court dismissed Count Four of the Indictment on the United States' motion. Id.

On January 13, 2020, Petitioner filed a Notice of Appeal, challenging the court's Judgment. ECF No. 114. The sole basis for Petitioner's challenge was "inefficient assistance of counsel," and Petitioner requested appointment of new counsel to pursue his appeal. Id. The Fourth Circuit dismissed Petitioner's appeal on November 23, 2020, explaining that because it did not discern evidence of Petitioner's allegations of ineffective assistance on the face of the record, the "claim should be raised, if at all, in a 28 U.S.C. § 2255 motion." United States v. Cox, No. 20-4044, 829 Fed.Appx 667 (4th Cir. Nov. 19, 2020) (quoting United States v. Faulls, 821 F.3d 502, 507-08 (4th Cir. 2016)).

The record of Petitioner's previous proceedings and the filings pertaining to the instant Motion permit the court to resolve the Motion without further argument, rendering an evidentiary hearing unnecessary.

## II. LEGAL STANDARDS

A petitioner may challenge a sentence imposed by a federal court if: (1) the sentence violates the Constitution or the laws of the United States; (2) the sentencing court lacked jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum; or (4) the sentence "is otherwise subject

3

to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proving the asserted grounds for relief by a preponderance of the evidence. See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). If the petitioner satisfies that burden, the court shall vacate, set aside, or correct the conviction or sentence, as appropriate. See 28 U.S.C. § 2255(b). If the § 2255 motion, however, when viewed against the record, conclusively shows that the petitioner is not entitled to relief, then the court may summarily deny the motion. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

The Sixth Amendment provides defendants a right to effective assistance of counsel. U.S. Const. amend. VI; see Strickland v. Washington, 466 U.S. 668, 686 (1984). To succeed on an ineffective assistance of counsel claim, a § 2255 petitioner must show that (1) the counsel's representation was deficient, that is, that counsel "made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) such deficient performance prejudiced the defense. Strickland, 466 U.S. at 687. A petitioner must "satisfy both prongs, and a failure of proof on either prong ends the matter." United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

To show deficient performance, counsel's actions or omissions must be measured against what "an objectively

4

reasonable attorney would have done under the circumstances existing at the time of the representation." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). An attorney's performance was constitutionally adequate if it "was reasonable 'under prevailing professional norms,' such that it was 'within the range of competence demanded of attorneys in criminal cases.'" United States v. Mooney, 497 F.3d 397, 401 (4th Cir. 2007) (cleaned up) (quoting Strickland, 466 U.S. at 688, and then Hill v. Lockhart, 474 U.S. 52, 56 (1985)). When analyzing this issue, the court must attempt to "eliminate the distorting effects of hindsight," and instead "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; see also Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009) (stating that if "counsel conducts a reasonable investigation of law and facts in a particular case, his strategic decisions are 'virtually unchallengeable'" (quoting Strickland, 466 U.S. at 690)).

To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In doing so, a petitioner "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility

5

of prejudice.'" <u>Satcher v. Pruett</u>, 126 F.3d 561, 572 (4th Cir. 1997) (quoting <u>Murray</u>, 477 U.S. at 494).

### III. PETITIONER'S CLAIMS

#### A. Alleged Ineffective Assistance During Plea

Petitioner alleges that his counsel's representation was constitutionally inadequate because his attorney, Harry Harmon ("Harmon" or "Counsel") failed to "[c]ommunicate with [him] and correctly inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial . . . ." ECF No. 177 at 4. Specifically, Petitioner claims that Counsel "failed to advise [him] that he would be held responsible for the relevant conduct of his co-conspirators," and therefore that he "had no idea that he was pleading guilty to the total amount of drugs attributable to [the] conspiracy." ECF No. 178 at 13. Petitioner also claims that "Harmon failed to discuss the Discovery" with him, which prevented Petitioner from "mak[ing] an informed decision on whether to plead guilty or proceed to trial." <u>Id.</u> at 14-15.

#### 1. Performance

For a petitioner to satisfy the <u>Strickland</u> standard based upon an allegation that, but for counsel's incompetence, he would not have pled guilty, he must "allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." <u>See</u>

6

McMann v. Richardson, 397 U.S. 759, 775 (1970). "[C]ounsel's advice to plead guilty is not to be judged by retrospectively considering it right or wrong." Via v. Superintendent, Powhatan Correctional Center, 643 F.2d 167, 171 (4th Cir. 1981).

Here, Petitioner's claim that he received ineffective assistance of counsel prior to the Plea Hearing is unsupported by Harmon's affidavit, see ECF No 193-1, and the plea hearing transcript, see ECF No. 142. According to the affidavit, Counsel met with Petitioner nine (9) separate times before the Plea Hearing to discuss his case. ECF No, 193-1 ¶ 5. On June 23, 2019, Counsel reviewed with Petitioner a copy of the preliminary discovery received from the Government, id. ¶ 6, and on August 9, 2019, Counsel "thoroughly discussed with [Petitioner] the drug weight involved in his case, including that [Petitioner] could be held responsible for his co-conspirators' reasonably foreseeable acts and drug quantities," id. ¶ 7. Counsel also directly rejected the suggestion that he coerced Petitioner into accepting the plea agreement or that he failed to "thoroughly review, consult with and discuss the discovery and facts of the case with [Petitioner] in this matter." Id. ¶ 13.

On August 19, 2019, during the plea colloquy, Petitioner answered affirmatively under oath to several inquiries designed to gauge whether his plea was knowing and voluntary. For

7

example, Petitioner acknowledged that he had discussed the Sentencing Guidelines with Harmon, including the "various considerations which go into determining the Guideline range," ECF No. 142 at 20, and that the sentencing judge may depart above or below the Guidelines, id. at 19. Of particular note, Petitioner confirmed he understood that the Guidelines "would include activities for which [Petitioner] was not charged," id., and that it was impossible for "Harmon or anyone else in court [that day] to know precisely what sentencing range will be called for by the [G]uidelines," until the PSR was prepared, id. at 21. Notwithstanding these acknowledgements, all under oath, petitioner then pleaded guilty to Count One of the Indictment. Id. at 26.

To show ineffective assistance of counsel, Petitioner must show that the counsel fell below the objective standard for representation under prevailing professional norms. Strickland, 466 U.S. at 688. Ultimately, Petitioner's conclusory accusations in the face of the contradictory statements contained in Harmon's affidavit and the transcript of the plea colloquy do not satisfy this requirement. Therefore, Petitioner has failed to show that he received ineffective assistance of counsel on this ground.

## 2. Prejudice

Even if Counsel's performance fell below the objective standard for representation, Petitioner has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. For example, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. In his Motion, Petitioner does indeed suggest that, had counsel more thoroughly advised him prior to the Plea Hearing, Petitioner might not have pleaded guilty and instead chose to proceed to trial. ECF No. 178 at 14, 15, 16.

However, even where a petitioner demonstrates that he would, in fact, have insisted on going to trial, he "'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). Aside from Petitioner's generalized statements that he might have decided to go to trial, Petitioner has provided no support that he might have won at trial, nor that his sentence would have been different had he been convicted at trial. "'[U]nsubstantiated and largely conclusory statements' are insufficient to carry a petitioner's burden as to the two prongs

9

of [Strickland]." Beyle v. United States, 269 F.Supp.3d 716, 726 (E.D. Va. 2017) (Smith, J.) (quoting Umar v. United States, 161 F.Supp.3d 366, 375 (E.D. Va. 2015) (Davis, J.)). Therefore, without specific evidence that he was prejudiced, Petitioner failed to show ineffective assistance of counsel on this ground. See Strickland, 466 U.S. at 687, 694.

### B. Alleged Ineffective Assistance During Sentencing

Petitioner next alleges that Counsel's representation at sentencing was constitutionally inadequate for two reasons. First, Petitioner alleges that Counsel failed to "properly argue" various objections, including challenges to the applicable drug quantity, to the application of a firearm enhancement, and to the calculation of the relevant criminal history points. ECF No. 177 at 5. Second, Plaintiff alleges that Counsel failed to "file for a reduction in the offense level pursuant to [Petitioner]'s minimal role in the conspiracy." Id.

#### 1. Performance

"Judicial scrutiny of counsel's performance must be highly deferential" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. Therefore, when evaluating the

10

adequacy of counsel's objections to a particular matter, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Beyle, 269 F.Supp.3d at 727 (citing Strickland, 466 U.S. at 689).

### i. Objection to Applicable Drug Quantity

Petitioner's sentencing range calculation included a drug quantity of 3,633.29 grams of heroin. PSR ¶ 37. While 2,870.00 grams were calculated directly from Petitioner's sworn Statement of Facts, some of the total quantity was attributed to Petitioner through his co-conspirators' distributions. PSR ¶ 31; ECF No. 69 at 1. Section 1B1.3 of the Sentencing Guidelines provides that, in conspiracy cases, the relevant conduct to be attributed to a defendant includes "all acts and omissions of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." See U.S.S.G. § 1B1.3.

Petitioner takes issue with this summation, claiming Counsel failed to properly argue that the amount of heroin distributed by Petitioner's co-conspirators' was not reasonably foreseeable to him. ECF No. 178 at 17-24. In fact, Counsel argued this point thoroughly at several junctures leading up to, and at, the sentencing hearing. First, in the Defense's

11

Objection to the PSR, Counsel cited various aspects of Petitioner's relationship to his co-conspirators to support his position that their quantity of distribution was "not foreseeable to him." ECF No. 85 at 2-6. Second, Counsel reiterated the point in the Defense's Position Paper, emphasizing that Petitioner's personal distribution was smaller than his co-conspirators. ECF No. 90 at 2-5. Finally, Counsel raised each of these arguments in detail at the sentencing hearing. See ECF No. 143.

While Petitioner's arguments at sentencing – and now in his Motion – appear to rely on propositions in some conflict with his sworn Statement of Facts, Petitioner ultimately reaffirmed at the sentencing hearing that he "agree[d] with the statement of facts." Id. at 44. Absent extraordinary circumstances, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established," and the court should "dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005). Here, Petitioner swore to the Statement of Facts at the Rule 11 plea colloquy, see ECF No. 142 at 26-27, and then reaffirmed the Statement of Facts at the sentencing hearing, see ECF No. 143 at 44. Accordingly, the court dismisses any allegation that "contradict[s] the sworn statements." See Lemaster, 403 F.3d at 222.

In sum, the record displays clearly that Harmon's challenge of the applicable drug weight did not fall below the Strickland standard. Rather, the argument was simply overruled by the court because the "statement of facts and the information in the presentence report" established by a "preponderance of the evidence" that that the total drug quantity was "reasonably foreseeable" to Petitioner. ECF No. 143 at 48. Accordingly, Counsel's performance was "objectively reasonable . . . under the circumstances," Savino, 85 F.3d at 599, and Petitioner was not prejudiced by Counsel's conduct, see infra Section III.B.2.

### ii. Objection to Applicability of the Firearm Enhancement

Petitioner's Guidelines range calculation also included a two-level enhancement for possession of a firearm pursuant to U.S.S.G. § 2D1.1(b)(1), because one co-conspirator was in possession of a firearm during the offense. PSR ¶ 38. In accordance with § 1B1.3(a)(1), where a defendant is convicted of conspiring to distribute drugs, the firearm enhancement is appropriate when one of his co-conspirators possessed a firearm within the scope and in furtherance of the conspiracy, so long as the possession was reasonably foreseeable to the defendant. See United States v. Kimberlin, 18 F.3d 1156, 1159-60 (4th Cir. 1994) (applying this reasoning). "Absent evidence of exceptional circumstances," it is "fairly inferable that a co-defendant's possession of a dangerous weapon is foreseeable to a

13

defendant with reason to believe that their collaborative criminal venture includes an exchange of controlled substances for a large amount of cash." United States v. Bianco, 922 F.2d 910, 912 (1st Cir. 1991); Kimberlin, 18 F.3d at 1160 (accord).

Seemingly eschewing the reasonably foreseeable standard, Petitioner argues that Counsel "failed to challenge" that the two-level enhancement should not apply because he had no actual knowledge of the co-conspirator's possession of the firearms. ECF No. 178 at 21. In fact, Counsel argued this point several times prior to sentencing. For example, in the Defense's Objection to the PSR, Counsel argued that the firearm enhancement should not apply because "the defendant never possessed or sold a firearm to [his co-conspirator]." ECF No. 85 at 8. Further, in the Defense's Position Paper, Counsel argued that the firearm was not reasonably foreseeable to Petitioner, because he did not actually possess it himself nor sell it to his co-conspirator. ECF No. 90 at 5. Finally, Counsel re-argued these points at the sentencing hearing. ECF No. 143 at 23.

As with Counsel's challenge to the attributable drug quantity, Harmon's arguments did not fall below the Strickland standard, they merely were overruled on the merits after clear application of the law. ECF 143 at 49. As this court noted at sentencing, the law of conspiracy does not require that a co-

conspirator have possessed or sold to another co-conspirator the firearm leading to the enhancement for its existence to be reasonably foreseeable. Bianco, 922 F.2d at 912. Accordingly, Petitioner failed to establish ineffective assistance on this ground by showing either substandard conduct or prejudice, see infra Section III.B.2.

### iii. Objection to Applicable Criminal History Calculation

Petitioner next briefly submits that, while Counsel had objected to Petitioner's criminal history points calculation prior to sentencing, that the matter was argued "poorly." ECF No. 178 at 17. This objection also originated in Petitioner's objection to the PSR. ECF No. 85 at 8-10. At that time, Harmon argued that Petitioner should have been assigned three (3) criminal history points, rather than six (6), for two (2) robberies he committed on separate occasions in 2001. Id. at 8. Counsel argued that the calculation was erroneous because "the felony convictions [were] imposed on the same date." See id. at 10. This objection was then withdrawn on the day of the sentencing hearing. See ECF No. 143 at 3-7. During the hearing, the court placed Petitioner under oath, confirmed with Petitioner that he agreed with this decision, and afforded Petitioner an opportunity to discuss the matter with Counsel. Id. After conferring with Counsel, Petitioner affirmed that he understood the decision and agreed with it. Id. at 6.

The Guidelines explain that "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest, (i.e., the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. § 4A1.2(a)(2). There is no question that Petitioner was arrested for the first offense before committing the second offense at issue. See PSR ¶¶ 52-52. Accordingly, each offense should have been assigned three (3) points, and Petitioner's criminal history category was properly calculated. See U.S.S.G. § 4A1.1(a).

Therefore, Harmon's decision not to pursue the matter further was reasonable given the dim prospect of success. See United States v. Mason, 774 F.3d 824, 830 (4th Cir. 2014) ("We have consistently made clear that we do not penalize attorneys for failing to bring novel or long-shot contentions."). Accordingly, Petitioner has failed to establish that Harmon fell below the objective standard for reasonable assistance on this ground, or that he was prejudiced, see infra Section III.B.2.

### iv. Failure to File for a "Minor Role" Reduction

Petitioner finally proposes that Counsel "failed to properly argue" for a "minor role" adjustment in his Guidelines calculation pursuant to U.S.S.G. § 3B1.2. ECF No. 178 at 25. Petitioner does not explain how the issue should have been "properly argued," yet suggests that he was entitled to the

16

reduction because he "ha[d] no guilty knowledge, meaning [his] lack of knowledge and the evidence would [have] support[ed] an inference that [Petitioner] engaged in a course of deliberate ignorance toward his co-conspirator's actions." ECF No. 178 at 25. Putting Petitioner's misunderstanding of the analytical framework to the side,[3] any allegation that Counsel's performance concerning the "minor role" adjustment was deficient is undermined by the record.

The Guidelines provide for a 2, 3, or 4-level decrease in offense level where the defendant was a "minimal" or "minor" participant in the offense. U.S.S.G. § 3B1.2. Whether this adjustment is appropriate "is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." Id. at Application Note 3(C).

In the Defense's Position Paper, Counsel argued that Petitioner's Guidelines range should be adjusted downward in accordance with this provision. ECF No. 90 at 26-27. At the sentencing hearing, Counsel then argued this point using various

---

[3] Petitioner apparently references the the willful blindness doctrine. Under this doctrine, "the government may 'prove knowledge by establishing that the defendant deliberately shielded himself from clear evidence of critical facts that are strongly suggested by the circumstances." United States v. Vinson, 852 F.3d 333, 357 (4th Cir. 2017) (quoting United States v. Jinwright, 683 F.3d 471, 478 (4th Cir. 2012)). An "inference of deliberate ignorance" would cut against Petitioner, suggesting he did have knowledge of his coconspirator's activities, meaning that they could be attributed to Petitioner.

aspects of the facts of the case that supported a finding that Petitioner's role was less significant than his co-conspirators. ECF No. 143 at 36-38, 56. However, at the hearing, the court ultimately concluded that the extent of Petitioner's "role in the conspiracy . . . ha[d] been properly set forth in the [PSR]," noting that Petitioner "was recruited down from New York," and that his role did not "deserve[] an actual numerical guidelines reduction, but is something that should be considered in his placement in the guideline range . . . ." ECF No. 143 at 52. The court explained that it would address the issue in this manner "unless someone request[ed] otherwise." Id. Counsel for the United States and Petitioner both agreed that this was the appropriate manner to consider Petitioner's relative culpability. See id. at 52-53.

When imposing sentence, the court noted that Petitioner was "the least culpable" among his other two coconspirators. ECF No. 143 at 70. However, the court also noted that Petitioner, as a thirty-year-old adult, "made a conscious decision to come down from New York to Virginia to be involved in distributing heroin," that the drug conspiracy lasted for many months, and that the coconspirators supplied a very significant volume of drugs. Id. at 63-64. Though the court concluded that Petitioner's conduct was too significant to warrant a Guidelines

18

role adjustment, the court still took his relative culpability into account, in response to Counsel's arguments. Id.

In sum, Counsel's advocacy for a minor role adjustment was a constitutionally adequate tactic to pursue. It was a judgement call entitled to a "strong presumption" that it "falls within the wide range of reasonable professional assistance." Beyle, 269 F.Supp.3d at 727 (citing Strickland, 466 U.S. at 689). Therefore, Petitioner has not met Strickland's first prong on this ground, nor has he shown prejudice, see infra Section III.B.2.

### 2. Prejudice

Additionally, for specific clarity, Petitioner failed to show, under the second prong of Strickland, that he suffered actual prejudice from either Counsel's objections or arguments at sentencing. Even if Counsel did not meet the objective standard of counsel in making his objections, Petitioner cannot show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. As noted above, Counsel's objections failed on the merits, not due to how the objections were pursued, but from the evidence plainly before the court in the Statement of Facts.

Further, even if counsel's argument for a minor role reduction fell below the objective standard, Petitioner still

19

has not established that it was error amounting to prejudice. Petitioner has merely offered that, if ineffective, counsel's argument "created a *possibility* of prejudice," not that it "worked to his *actual* and substantial disadvantage." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis added). Therefore, Petitioner has failed to show that his attorney's representation prejudiced his defense. See Strickland, 466 U.S. at 687.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's § 2255 Motion, ECF No. 177, is **DENIED**. Petitioner is **ADVISED** that he may appeal from this Final Memorandum Order by filing, within sixty (60) days of entry of this Final Memorandum Order, a written notice of appeal with the Clerk of the United States District Court, U.S. Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The court declines to issue a certificate of appealability for the reasons stated herein.

The Clerk is **DIRECTED** to send a copy of this Final Memorandum Order to Petitioner; to trial counsel, Mr. Harry Harmon; and to the United States Attorney at Norfolk.

**IT IS SO ORDERED.**

/s/ RBS
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

October 25, 2022

20